UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
LISA CASTAGNA and ANTHONY PENNINGTON,    :    Case No.: 16 Civ. 760
 on behalf of themselves and all others similarly situated, :
                                                         :    **COLLECTIVE ACTION**
                                      Plaintiffs,     :    **COMPLAINT**
              - against -                             :
                                                         :
HAMPTON CREEK, INC.,                      :
                                                         :
                                      Defendant.     :
------------------------------------------------------------------ X

  Plaintiffs Lisa Castagna and Anthony Pennington (collectively "Plaintiffs or FLSA Collective Representatives) on behalf of themselves and all others similarly situated, by and through their attorneys Shulman Kessler LLP, complaining of  Hampton Creek, Inc. ("Defendant") allege as follows:

<u>PRELIMINARY STATEMENT</u>

  1. This lawsuit seeks to recover unpaid overtime and unpaid wage compensation for Plaintiffs and their similarly situated co-workers who have worked for Defendant as relationship specialists.

  2. Defendant Hampton Creek, Inc. in in the business of producing and marketing eggless food for sale to consumer through retailers nationwide.

  3. Defendant required its relationship specialists to contact local stores, travel to local stores, meet with the staff of local stores, rearrange the Defendant's products on the store shelves so that Defendant's products are more prominently displayed, create a directory for each store the relationship specialist contacted, post messages about the company's products on social media outlets, print flyers for demonstrations, set up tables and signs at each demonstration

location, prepare dishes with the Defendant's product, offer these dishes to customers, encourage customers to purchase the Defendant's product, provide customers with coupons for Defendant's products, take pictures of customers with the Defendant's products, provide Defendant with detailed descriptions of interactions related to Defendant's products and participate in phone conferences and online chat room sessions about Defendant's products.

4.      Defendant Hampton Creek sent its relationship specialists to various locations throughout the country. At these locations relationship specialists were required to set up food demonstration sites, hand out samples of Hampton Creek food, prepare recipes using Hampton Creek products, meet with the staff of various stores to promote Hampton Creek products and survey the shelves of the stores to observe the sale volume of Hampton Creek products. If there was not enough product on the shelves, relationship specialists were required to locate a store employee to fill the shelves with the mandated amount of product or fill the shelves themselves. If an employee did not complete these tasks during the four hours allotted for "demo time," the employee would have to perform the tasks off the clock. Relationship specialists performed about 3 hours off unpaid, off the clock work at every demonstration of the Defendant's products.

5.      In addition to their other duties, relationship specialists were required to sell a specific number of eggless products every week. The amount of product relationships specialists were required to sell varies and is communicated in a weekly email. If the relationship specialist had not met their sales goals they would have to sell the product during their time off.

6.      Defendant Hampton Creek required its relationship specialists to promote its products on social media. Relationship specialists were required to use their personal social media accounts. The specific requirements of each day's social media promotion were called "Digital Deeds" and were sent out weekly by supervisors, called "gurus" in Hampton Creek

2

parlance. If a relationship specialist did not complete a Digital Deed during paid time, the employee was required to complete the Digital Deed during off the clock time.

7.     Defendant failed to pay relationship specialists for all hours worked in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL" or "N.Y. Lab. Law")

8.     While employed by Defendant, Plaintiffs and their similarly situated co-workers consistently worked over 40 hours per week without receiving premium overtime pay for all the hours they worked. Throughout the relevant period, it was Defendant's policy to deprive Plaintiffs their similarly situated co-workers of all of their earned overtime wages in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL" or "N.Y. Lab. Law").

9.      In order to avoid paying Plaintiffs and similarly situated relationship specialists overtime premiums for all of the hours worked in excess of 40 per workweek, Defendant misclassified their relationship specialists as independent contractors and paid them a biweekly salary.

10.     While employed by Hampton Creek, Plaintiffs and similarly situated relationship specialists were denied a minimum wage due to the unlawful kick-backs they were required to pay in order to complete their duties for Hampton Creek, including but not limited to expenses related to their vehicle, gasoline, and other travel expenses. Throughout the relevant period, it was Hampton Creek's policy to subject Plaintiffs and their similarly situated co-workers to kick-backs and thereby deprive them of a minimum wage in violation of the FLSA and the NYLL.

11.     Defendant failed to accurately track the hours worked by Plaintiffs and their similarly situated co-workers.

12.     Defendant failed to provide Plaintiffs with an annual wage statement.

13.     Defendant failed to provide Plaintiffs with a wage notice at the time of hire.

14.     Defendant failed to provide Plaintiffs with accurate wage statements.

15.     Plaintiffs bring this action on behalf of themselves and all similarly situated current and former relationship specialists of Defendant pursuant to the FLSA.

16.     Plaintiffs also seek permission to give notice of this action pursuant to 29 U.S.C. § 216(b) to all persons who are presently, or have at any time during the 3 years immediately preceding the filing of this action, worked for Defendant as a relationship specialist.

**<u>JURISDICTION & VENUE</u>**

17.     Jurisdiction of the Court over this controversy is based upon 29 U.S.C. § 201, *et seq.*, 28 U.S.C. §§ 1331 and 1337 and the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

18.     This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367.

19.     Defendant does business in Nassau, Suffolk, Kings, and Queens Counties.

20.     Plaintiffs performed work for Defendant in Nassau, Suffolk, Kings, and Queens Counties.

21.     Accordingly, this action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391.

## THE PARTIES

*Plaintiffs*

22.     Lisa Castagna is a resident of the County of Suffolk, State of New York.

23.     At all times relevant to this Complaint, Lisa Castagna was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and N.Y. Lab. Law § 190(2).

24.     At all times relevant, Lisa Castagna was employed by Defendant as a relationship specialist.

25.     Lisa Castagna has expressed her consent to make these claims against the Defendant by filing a written consent form, pursuant to 29 U.S.C. § 216(b).

26.     Anthony Pennington is a resident of the County of Suffolk, State of New York.

27.     At all times relevant to this Complaint, Anthony Pennington was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and N.Y. Lab. Law § 190(2).

28.     At all times relevant, Anthony Pennington was employed by Defendant as a relationship specialist.

29.     Anthony Pennington has expressed his consent to make these claims against the Defendant by filing a written consent form, pursuant to 29 U.S.C. § 216(b).

*Defendant*

30.     Upon information and belief, Defendant Hampton Creek, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 371 10th Street, San Francisco, California 94103.

31.     Upon information and belief, Defendant Hampton Creek, Inc. maintains control, oversight, and direction over its operations and employment practices.

5

32.     Upon information and belief, Defendant Hampton Creek, Inc. does business as Hampton Creek.

33.     At all times hereinafter mentioned, Defendant Hampton Creek, Inc. was and still is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

34.     At all times hereinafter mentioned, Defendant Hampton Creek employed employees, including Plaintiffs herein, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

35.     At all relevant times, Defendant maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

36.     Defendant applied the same employment policies, practices, and procedures to all relationship specialists throughout the United States, including policies, practices, and procedures with respect to payment of overtime compensation.

## FLSA COLLECTIVE ACTION CLAIMS

37.     Plaintiffs bring the First and Third Causes of Action, pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated persons who work or have worked for Defendant as relationship specialists within the last 3 years and who elect to opt-in to this action.

38.    Upon information and belief, there are approximately more than 100 current and former relationship specialists that are similarly situated to Plaintiffs who were denied overtime compensation.

39.    Plaintiffs represent other relationship specialists, and are acting on behalf of Defendant's current and former relationship specialists' interests as well as their own interests in bringing this action.

40.    Defendant unlawfully required Plaintiffs and all individuals employed as relationship specialists to work in excess of 40 hours per week without paying them overtime compensation at a rate of at least 1 and ½ times their regular hourly rate.

41.    Defendant unlawfully required Plaintiffs and all individuals employed as relationship specialists to work more than 30 hours per week without being compensated.

42.    Defendant required Plaintiffs to pay for expenses required for the performance of their work for Defendant.

43.    Defendant required Plaintiffs to pay for transportation required for the completion of their duties for Defendant, including public transportation and gasoline costs.

44.    Plaintiffs seek to proceed as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following class of persons:

> All relationship specialists who are currently or have been employed by Defendant (hereinafter referred to as the "FLSA Collective") at any time during the 3 years prior to the filing of their respective consent forms (hereinafter referred to as the "Collective Period").

45.    Defendant was aware or should have been aware that the law required it to pay non-exempt employees, including Plaintiffs and the FLSA Collective, an overtime premium of 1 and ½ times their regular rate of pay for all work-hours Defendant suffered or permitted them to

work in excess of 40 per workweek.  Upon information and belief, Defendant applied the same unlawful policies and practices to their relationship specialists throughout the United States.

46.    The FLSA Collective is readily identifiable and locatable through the use of the Defendant' records.  The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).  Unless the Court promptly issues such a notice, the FLSA Collective, who have been unlawfully deprived of overtime pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## PLAINTIFFS WERE DEFENDANT'S EMPLOYEES - FACTUAL ALLEGATIONS

47.    Although Plaintiffs and similarly situated relationship specialists were classified as independent contractors of Defendant, Defendant retained the right to control and did control nearly every aspect of the Plaintiffs' work.  Such control included, but was not limited to, the following:

    a.  Plaintiffs and similarly situated relationship specialists were required to travel to store locations assigned by the Defendant and persuade each store location to allow the Defendant to promote products on store premises.

    b.  Plaintiffs and similarly situated relationship specialists were required to follow a script generated by the Defendant during these interactions and were required to report to supervisors in detail about the quality and outcome of the interaction.

    c.  Once Plaintiffs and similarly situated relationship specialists were assigned to a store, they had to create a schedule on Google Calendar. This schedule had to be approved by the Defendant.

    d.  On the days that Plaintiffs and similarly situated relationship specialists were scheduled to perform a demonstration, they were required to arrive one hour prior to the demonstration to meet with staff at each store location and to find the

marketing team. During this time with the marking team they were required to make small talk and promote products following a script that Defendant provided.

e.  Plaintiffs and similarly situated relationship specialists were required to set up demonstration locations by precisely following the instructions that were sent out in the weekly "Most Important Things" ("MIT") emails. These emails demonstrated where to place the containers of food and how to properly array the completed recipe.

f.  If Plaintiffs and similarly situated relationship specialists encountered any problems with a demonstration recipe, they were required to communicate with Defendant for instructions, they were not permitted to make on the spot substitutions or decisions.

g.  Plaintiffs and similarly situated relationship specialists were required to survey the condiment aisle and ensure that Defendant's product was sufficiently displayed on the shelves. Plaintiffs and similarly situated relationship specialists were sent weekly emails to demonstrate what sufficient stocking and facing looked like.  If the product was not displayed in the manner that the Defendant had specified, the Plaintiffs and similarly situated relationship specialists were supplied with talking points to persuade staff at that particular location to change the shelves to match Defendant specifications.

h.  Plaintiffs and similarly situated relationship specialists were required to conduct several purchases in the store to buy all the ingredients necessary to prepare the demonstration dish of the day. They were required to buy the cheapest ingredients and were not permitted to substitute any part of the mandated recipe.

i.  Plaintiffs and similarly situated relationship specialists were required to conduct a four hour demonstration regardless of the number of customers in the store.

j.  After the Plaintiffs and similarly situated relationship specialists had conducted a four hour demonstration, they were required to find manager of the store and speak with them. Defendant provided with Plaintiffs and similarly situated relationship specialists with talking points to use during conversations with store managers.

9

k.   Plaintiffs and similarly situated relationship specialists were also required to find and speak to the dairy buyer at each location. Defendant provided Plaintiffs and similarly situated relationship specialists with talking points and a script to use during conversations with the dairy buyer.

l.   Defendant required Plaintiffs and similarly situated relationship specialists to use their personal social media accounts to post about Defendant's products. Defendant monitored Plaintiff's personal social media accounts and forced Plaintiffs and similarly situated relationship specialists to take down any content that conflicted with Defendant's brand presentation. Defendant told Plaintiffs and similarly situated relationship specialists, "You always represent Hampton Creek" and thus cannot post content that conflicts with Hampton Creek's message.

m.   Defendant repeated mantra "Run it like you own it" during weekly conference calls and daily communication with Plaintiffs and similarly situated relationship specialists.

n.   Defendant's gave Plaintiffs and similarly situated relationship specialists a role description which stated that "You are on the Hampton Creek sales team. Your minimum goals is to sell 16 jars of Just Mayo every day in each store you "own" (even on days you are not in the store)".

o.   Plaintiffs and similarly situated relationship specialists were required to submit their hours on a sheet called a "survey". On this survey they were required to write a detailed accounting of specific interactions they had and duties that they had completed each day.

p.   Plaintiffs and similarly situated relationship specialists were required to participate in a mandatory weekly conference call. This conference call was typically scheduled at 9 or 10 PM EST.  During this conference call Defendant laid out required tasks for the week.

q.   Plaintiffs and similarly situated relationship specialists were expected to respond immediately to communication from Hampton Creek during their days off.

r.   Plaintiffs and similarly situated relationship were not permitted to engage in other employment during their regularly scheduled hours with Defendant.

10

      s.   Plaintiffs and similarly situated relationship specialists did not negotiate regarding the rates charged for their services.

48.    Plaintiffs and similarly situated relationship specialists did not have an opportunity to experience profit or losses as a result of their employment for Defendant.

49.    Defendant did not require Plaintiffs and similarly situated relationship specialists to have any specific skills or take any independent initiative to perform their duties.

50.    Plaintiffs and similarly situated relationship specialists performed services that are not outside the usual course of Defendant's business and are integral to Defendant's business.

51.    Plaintiffs and similarly situated relationship specialists could not engage in an independent business given the full-time nature of their work for Defendant.  Plaintiffs and similarly situated relationship specialists are dependent upon Defendant for their work.

## INDIVIDUAL FACTUAL ALLEGATIONS

*Lisa Castagna*

52.    Lisa Castagna was employed by Defendant from in or about August 2014 until in or about May 2015 as a relationship specialist.

53.    Lisa Castagna was an employee of Defendant, working under its direct supervision.

54.    Lisa Castagna reported to various locations for Defendant, including but not limited to: Whole Foods, Lake Grove; Whole Foods, Jericho; Whole Foods, Manhasset; Whole Foods, Brooklyn; Whole Foods, Portchester; Whole Foods, Yonkers; Whole Foods, White Plains; Whole Foods, Montclair, New Jersey; Whole Foods, Ridgewood, New Jersey and Stony Brook University.

11

55.    Throughout Lisa Castagna's employment for Defendant, she worked 12 hours per day Tuesdays through Fridays, 14 hours per day on Saturdays and Sundays and 8 hours per day on Mondays.

56.    At all times hereinafter mentioned, Lisa Castagna was required to be paid overtime pay at the statutory rate of 1 and ½ her regular rate of pay after she worked 40 hours in a workweek.

57.    During most workweeks between August 2014 and May 2015, Lisa Castagna worked more than 80 hours per week.

58.    Defendant failed to compensate Lisa Castagna for all of the time worked in excess of 40 hours per week at a rate of at least 1 and ½ times her regular hourly rate, throughout the entire term of her employment with Defendant.

59.    Defendant failed to compensate Lisa Castagna for all of the time worked. She was required to perform 30 hours of unpaid work for the Defendant every week. Without being compensated at her hourly rate, Lisa Castagna was required to perform administrative tasks, meet with store managers and dairy buyers, monitor the supply levels of eggless products at local stores, monitor the placement of the products in the store, and promote the Defendant's products online and in local stores.

60.    Defendant failed to furnish Lisa Castagna with an accurate statement of wages listing hours worked, rates paid, gross wages, allowances and deductions taken, and net wages paid.

61.    Defendant failed to provide a wage notice to Lisa Castagna.

62.    Upon information and belief, Defendant did not keep accurate records of hours worked by Lisa Castagna.

12

*Anthony Pennington*

63.     Anthony Pennington was employed by Defendant from in or about January 2014 until in or about May 2015 as a relationship specialist.

64.     Anthony Pennington was an employee of Defendant, working under its direct supervision.

65.     Anthony Pennington reported to various locations for Defendant, including but not limited to: Whole Foods, Lake Grove; Whole Foods, Jericho; Whole Foods, Manhasset; Costco, Glendale, Arizona; Hampton Creek Corporate Office; Dollar Tree, Long Island; Target, Long Island and Stony Brook University.

66.     Throughout Anthony Pennington's employment for Defendant, he worked 7 hours per day on Mondays, Saturdays and Sundays and 9 hours per day on Tuesdays, Wednesdays, Thursdays and Fridays.

67.     At all times hereinafter mentioned, Anthony Pennington was required to be paid overtime pay at the statutory rate of 1 and ½ his regular rate of pay after he worked 40 hours in a workweek.

68.     During most workweeks between January 2014 and May 2015, Anthony Pennington worked more than 55 hours per week.

69.     Defendant failed to compensate Anthony Pennington for all of the time worked in excess of 40 hours per week at a rate of at least 1 and ½ times his regular hourly rate, throughout the entire term of his employment with Defendant.

70.     Defendant failed to compensate Anthony Pennington for all of the time worked. He was required to perform more than 30 hours of unpaid work every week for the Defendant every week. Without being compensated at this hourly rate, Anthony Pennington was required to perform administrative tasks, meet with store managers and dairy buyers, monitor the supply levels of eggless products at local stores, monitor the placement of the products in the store, promote the Defendant's products online and in local stores and cold call lists of potential buyers of the Defendant's eggless product.

71.     During the period of time when Anthony Pennington was promoting the Defendant's fellowship program at Stony Brook University, Defendant failed to compensate Mr. Pennington for 40 hours of work on Stony Brook's campus.

72.     Defendant failed to furnish Anthony Pennington with an accurate statement of wages listing hours worked, rates paid, gross wages, allowances and deductions taken, and net wages paid.

73.     Defendant failed to provide a wage notice to Anthony Pennington.

74.     Upon information and belief, Defendant did not keep accurate records of hours worked by Anthony Pennington.

### FIRST CAUSE OF ACTION
**FLSA –Unpaid Overtime Wages**
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

75.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

76.     Plaintiffs and members of the FLSA Collective are non-exempt employees entitled to be paid overtime compensation for all overtime hours worked.

14

77.     Defendant employed Plaintiffs and members of the FLSA Collective for workweeks longer than 40 hours and willfully failed to compensate Plaintiffs for all of the time worked in excess of 40 hours per week, at a rate of at least 1 and ½ times their regular hourly rate, in violation of the requirements of Section 7 of the FLSA, 29 U.S.C. § 207(a) (1).

78.     Plaintiffs have expressed their consent to make these claims against the Defendant by filing a written consent form, pursuant to 29 U.S.C. § 216(b).

79.     Defendant failed to make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiffs and the FLSA Collective.

80.     Because Defendant' violations of the FLSA were willful, a 3 year statute of limitations applies, pursuant to 29 U.S.C. § 255.

81.     As a consequence of the willful underpayment of wages, alleged above, Plaintiffs have incurred damages thereby and Defendant are indebted to them in the amount of the unpaid overtime compensation, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### NYLL – Unpaid Overtime Wages
### (Brought on behalf of Plaintiffs)

82.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

83.     Defendant employed Plaintiffs for workweeks longer than 40 hours and willfully failed to compensate Plaintiffs for all of the time worked in excess of 40 hours per week, at a rate of at least 1 and ½ times their regular hourly rate, in violation of the requirements of NYLL.

84.     By the course of conduct set forth above, Defendant has violated N.Y. Lab. Law § 650, *et seq..*; 12 N.Y.C.R.R. Part 142-2.2.

85.     Defendant failed to keep, make, preserve, maintain and furnish accurate records of time worked by Plaintiffs.

86.     Defendant had a policy and practice of refusing to pay overtime compensation for all hours worked to Plaintiffs.

87.     Defendant' failure to pay overtime compensation to Plaintiffs was willful within the meaning of N.Y. Lab. Law § 663.

88.     As a consequence of the willful underpayment of wages, alleged above, Plaintiffs have incurred damages thereby and Defendant are indebted to them in the amount of the unpaid overtime compensation and such other legal and equitable relief due to Defendant' unlawful and willful conduct, as the Court deems just and proper.

89.     Plaintiffs seek recovery of liquidated damages, attorneys' fees, and costs to be paid by Defendant as provided by the NYLL.


**THIRD CAUSE OF ACTION**
**FLSA – Unpaid Minimum Wages**
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

90.     Plaintiffs, on behalf of themselves and the FLSA Collective, reallege and incorporate by reference all allegations in all preceding paragraphs.

91.     Defendant have engaged in a widespread pattern, policy and practice of violating the FLSA as detailed in this Collective Action Complaint.

92.     At all relevant times the Defendant have been and continue to be an employer engaged in interstate commerce and or in the production of good for commerce within the meaning of FLSA, 29 U.S.C. §203.

93.     At all relevant times Defendant employed "employee[s]" including Plaintiffs and the FLSA Collective Members.

94.     Defendant were required to pay Plaintiffs and the members of the FLSA Collective at the applicable New York State minimum wage rate for all hours worked.

95.      Defendant willfully failed to pay Plaintiffs and the members of the FLSA Collective the minimum wage that they are entitled to receive.

96.     Defendant required Plaintiffs and members of the FLSA Collective to perform more than approximately 30-33 hours of unpaid work every week.

97.     Defendant violated Plaintiffs' rights to receive their wages free and clear of all "kick-backs," as codified by 29 C.F.R. § 531.35, as a result of Defendant requiring Plaintiffs and members of the FLSA Collective to pay for expenses required for the performance of their work for Defendant.

98.     Defendant required Plaintiffs and members of the FLSA Collective to pay for all expenses and materials required for the completion of their duties for Defendant, including, but not limited to public transportation and gasoline costs.

99.     Defendant's violations of the FLSA, as described in this Collective Action Complaint, have been willful and intentional. Defendant was aware or should have been aware that the practices described in this Collective Action Complaint were unlawful.

100.     Defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and the FLSA Collective.

101.     Because Defendant' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

17

102.    Plaintiffs have expressed their consent to make these claims against Defendant by filing a written consent forms, pursuant to 29 U.S.C. § 216(b).

103.    As a consequence of the willful underpayment of wages, alleged above, Plaintiffs and the members of the FLSA Collective have suffered damages by being denied minimum wage in accordance with the FLSA, in amounts to be determined at trial and are entitled to recovery of such amounts, liquidated damages, together with prejudgment interest, attorneys' fees, and costs and other compensation pursuant to 29 USC §§ 201 *et seq*.

## FOURTH CAUSE OF ACTION
### NYLL – Unpaid Non-Overtime Wages
### (Brought on behalf of Plaintiffs)

104.    Plaintiffs, on behalf of themselves, reallege and incorporate by reference all allegations in all preceding paragraphs.

105.    Defendant engaged in a widespread pattern, policy and practice of violating the NYLL as detailed in this Collective Action Complaint.

106.    At all relevant times Plaintiffs were employees of the Defendant.

107.    At all relevant times Defendant were employers of the Plaintiffs within the meaning of N.Y. Lab. Law § 190(3).

108.    At all relevant times Plaintiffs were covered by the NYLL.

109.    Defendant was required to pay Plaintiffs at their regular hourly rate for all hours worked for Defendant up to and including 40 hours per week.

110.    Defendants willfully failed to compensate Plaintiffs  at their regular hourly rate for off-the-clock work up to and including 40 hours per week, in violation of the requirements of the NYLL, specifically N.Y. Lab. Law § 661(3).

18

111.    Defendant required Plaintiffs to perform more than 30 hours of off-the-clock work every week.

112.    Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiffs. Defendants erased time that was claimed or discouraged employees from recording all hours worked.

113.    Defendants had a policy and practice of refusing to compensate Plaintiffs for off-the-clock work.

114.    Defendants' failure to pay compensation to Plaintiffs was willful within the meaning of N.Y. Lab. Law § 663.

115.    As a consequence of the willful underpayment of wages, alleged above, Plaintiffs incurred damages thereby and Defendants are indebted to her in the amount of the unpaid wages and such other legal and equitable relief due to Defendants' unlawful and willful conduct, as the Court deems just and proper.

116.    Plaintiff seeks recovery of liquidated damages, interest, attorneys' fees, and costs to be paid by Defendants as provided by the NYLL.

**FIFTH CAUSE OF ACTION**
**NYLL – Unpaid Minimum Wage Due To Illegal Kickbacks**
**(Brought on behalf of Plaintiffs)**

117.    Plaintiffs, on behalf of themselves, reallege and incorporate by reference all allegations in all preceding paragraphs.

118.    Defendant violated Plaintiffs and the New York Class' rights to receive their wages free and clear of all "kick-backs," as codified by N.Y. Lab. Law § 198–b, as a result of Defendant requiring Plaintiffs to pay for expenses required for the performance of their work for Defendant.

119.    Defendant required Plaintiffs to pay for transportation required for the completion of their duties for Defendant, including public transportation and gasoline costs.

120.    Defendant required Plaintiffs to travel to multiple locations to perform demonstrations, monitor various stores' mayonnaise supply, buy out shelves of Defendant's products and meet with the staff of merchants who sold Defendant's products or were potential sellers of Defendant's products.

121.    Through their knowing or intentional failure to pay the required minimum hourly wage to Plaintiffs, Defendant willfully violated the NYLL, Article 19 §§ 650 *et seq.* and the supporting New York State Department of Labor Regulations.

122.    Due to the Defendant' willful violations of the NYLL, Plaintiffs are entitled to recover from the Defendant their unpaid wages, liquidated damages as provided by the NYLL, reasonable attorneys' fees, costs and pre-judgment and post-judgment interest.

**SIXTH CAUSE OF ACTION**
**NYLL – Notice and Record-Keeping Requirement Violation**
**(Brought on behalf of Plaintiffs)**

123.    Plaintiffs on behalf of themselves, reallege and incorporate by reference all allegations in all preceding paragraphs.

124.    Defendant failed to provide Plaintiffs with a wage notice as required by NYLL Article 6 § 195(1), in English or the language identified as their primary language, containing Plaintiffs rates of pay, basis of these rate of pay, whether paid by the hour, shift, day, week, salary or commission or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL Article 6 § 191; the name of the employer and any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business: and a mailing

address if different; the telephone number of the employer; plus other information that the commissioner deems material and necessary.

125.    Defendant willfully failed to supply Plaintiffs with an accurate statement of wages as required by NYLL Article 6 §195 (3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

126.    Through their knowing and intentional failure to provide Plaintiffs with wage notices required by the NYLL, Defendant has willfully violated NYLL Article 6 §§ 190 *et seq.* and the supporting New York State Department of Labor Regulations.

127.    Through their knowing and intentional failure to provide Plaintiffs with wage statements required by the NYLL, Defendant has willfully violated NYLL Article 6 §§ 190 *et seq.* and the supporting New York State Department of Labor Regulations.

128.    As a result of Defendant' failure to provide a wage notice to Plaintiffs, each Plaintiff is entitled to damages of $50 for each workweek Defendant failed to provide Plaintiffs with a wage notice or a total of $2,500, reasonable attorneys' fees, costs and injunctive and declaratory relief as provided for by of NYLL Article 6 §198(1-b).

129.    Due to Defendant' violations of NYLL § 195, for each workweek that Defendant failed to provide a proper wage statement to Plaintiffs from January 1, 2012, through February 26, 2015, Plaintiffs are entitled to damages of $100, or a total of $2,500, as provided for by NYLL § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

130.    Due to Defendant' violations of NYLL § 195, for each day that Defendant failed to provide a proper wage statement from February 27, 2015 through the present, Plaintiffs are entitled to damages of $250, or a total of $5,000, as provided for by NYLL § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, seek for the following relief:

**WHEREFORE**, Plaintiffs, individually and on behalf of themselves and all others similarly situated, seek the following relief:

A.    Designation that of this action as a collective action on behalf of the FLSA Collective Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action and permitting them to assert timely FLSA claims and state claims in this action by filing an individual Consent to Sue form pursuant to 29 U.S.C. § 216(b);

B.    Unpaid minimum wage and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

C.    Unpaid wages pursuant and liquidated damages permitted by law pursuant to NYLL.

D.    Liquidated damages relating to lost wages, as provided for by FLSA § 216(b) and the NYLL;

E.      Statutory penalties of $50 for each workweek Defendant failed to provide Plaintiffs with a wage notice or a total of $2,500, reasonable attorneys' fees, costs and injunctive and declaratory relief as provided for by of NYLL Article 6 §198;

F.      Statutory penalties for each workweek that Defendant failed to provide a proper wage statement during the period from January 1, 2012, through February 26, 2015.  Plaintiffs are entitled to damages of $100 for each workweek, or a total of $2,500, as provided for by NYLL § 198;

G.      Statutory penalties for each day that Defendant failed to provide a proper wage statement from February 27, 2015 through the present. Plaintiffs are entitled to $250 per day or a total of $5,000, as provided for by NYLL § 198;

H.      Pre-judgment interest and post-judgment interest as provided by law;

I.      Issuance of a declaratory judgment that the practices complained of in this action are unlawful under N.Y. Lab. Law § 190, *et seq*.;

J.      An injunction requiring Defendant to cease the unlawful activity described herein pursuant to N.Y. Lab. Law § 190, *et seq*.;

K.      Reasonable incentive awards for the Class Representatives to compensate them for the time spent attempting to recover wages for the Collective Class and for the risks they took in doing so;

L.      Reasonable attorneys' fees and costs of the action; and

M.      Such other injunctive and equitable relief as this Court shall deem just and proper.


Dated: Melville, New York
         February 12, 2016

                                          Respectfully submitted,

                                          By:    /s/ Troy L. Kessler
                                                 Troy L. Kessler

                                          **SHULMAN KESSLER LLP**
                                          Troy L. Kessler
                                          Marijana Matura
                                          Garrett Kaske
                                          534 Broadhollow Road, Suite 275
                                          Melville, New York 11747
                                          Telephone: (631) 499-9100
                                          *Attorneys for Plaintiffs and the*
                                          *Putative FLSA Collective*